**DEPARTMENT OF JUSTICE IMMIGRATION AND NATURALIZATION SERVICE, BORDER PATROL, EL PASO, TEXAS, Petitioner, Cross–Respondent,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent, Cross–Petitioner.**

No. 90–4599.

United States Court of Appeals, Fifth Circuit.

Aug. 26, 1991.

1. H.R.Conf.Rep. No. 2543, 83rd Cong.2d Sess. 59, *reprinted in* 1954 U.S.Code Cong. & Admin. News 5280, 5319–20.

McJeffrica Jenkins Lee, William Kanter, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for petitioner, cross-respondent.

Kevin M. Grile, Chicago, Ill., Jill A. Griffin, William Persina, Sol., William R. Tobey, Arthur A. Horowitz, FLRA, Mark D. Roth, General Counsel, Charles A. Hobbie, Deputy Counsel, Washington, D.C., for intervenor Am. Fed. of Gov't Emp.

Before CLARK, Chief Judge,
GOLDBERG and GARWOOD, Circuit
Judges.

CLARK, Chief Judge:

The Immigration and Naturalization Service (INS) petitions for review of a decision and order of the Federal Labor Relations Authority (FLRA) which held that INS committed an unfair labor practice in violation of 5 U.S.C. § 7116. The FLRA cross-applies for enforcement of its order. We grant the petition for review, vacate the decision and order, and deny enforcement at this time, but remand to consider an important unresolved fact issue.

I. Background.

A. Facts.

In April 1987, a building burned on the Mexican side of the border near El Paso, Texas. The Mexican government filed a formal complaint alleging that United States border patrol agents caused the fire. In response, the United States Attorney for the Western District of Texas began a criminal investigation. Under the direction of the United States Attorney, the INS's Office of Professional Responsibility (OPR) interviewed border patrol agents who were considered suspects or potential witnesses.

OPR is an organization within INS which investigates allegations of misconduct on the part of INS employees, including border patrol agents. When alleged misconduct is potentially criminal, OPR reports the results of its investigation to the United States Attorney for its decision on whether to prosecute.

As part of its investigation, OPR interviewed border patrol agent Jose Cruz (Cruz) who had been on duty during the night of the fire. Cruz was considered a suspect. Arcadio Neira (Neira), the president of Cruz's local union, accompanied Cruz to the interview as his union representative. The parties stipulated that Cruz

initially requested union representation at the interview and that Cruz reasonably believed that the interview might result in some type of disciplinary action against him.

OPR's regional director Lawrence Granelli (Granelli) and special agents Perry Suitt (Suitt) and Juan Escobedo (Escobedo) were present when Cruz arrived for the interview. The parties agree that Granelli told Cruz that he was entitled to a union representative if he so desired. Granelli explained that the interview was criminal rather than administrative in nature and that Cruz was a suspect. Granelli further advised Cruz that his union representative could not claim an attorney-client privilege and could be subpoenaed to testify against Cruz by OPR, a grand jury, or at trial. Granelli also told Cruz that he was not under arrest, would not be arrested during the interview, and that he was free to leave at any time to seek legal counsel or to obtain advice from his union representative. When Cruz reasserted his desire for union representation, Granelli reiterated the distinction between a criminal and an administrative proceeding and stressed the absence of an attorney-client privilege. Granelli also advised Cruz that, as a federal officer, he was expected to cooperate with the investigation without infringing any of his rights, but that he could refuse to submit to the interview and could pick and choose the questions he wanted to answer and terminate the interview at any time.

Cruz and Neira then left the room to confer. When they came back, Cruz agreed to be interviewed without his union representative. However, Neira waited outside the room so that he and Cruz could confer outside the presence of the interviewers if necessary. During the interview, Suitt and Escobedo questioned Cruz. Granelli waited outside with Neira. Suitt and Escobedo told Cruz that he was free to leave the room to confer with Neira, to obtain legal counsel, or to terminate the interview.

Toward the end of the interview, Suitt and Escobedo informed Cruz of his rights

under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). They then asked Cruz about statements attributed to him by others. Cruz answered several questions, but he eventually refused to answer any more and terminated the interview.

The United States Attorney brought the case against Cruz before a grand jury, but the grand jury failed to indict him. No disciplinary action was taken against Cruz based on the fire incident.

### B. Proceedings below.

On behalf of Cruz, the American Federation of Government Employees, National Border Patrol Council (the union), filed an unfair labor practice complaint against the INS. The union alleged that the INS, through Granelli, Suitt, and Escobedo, violated § 7114(a)(2)(B) of the Federal Service Labor–Management Relations Statute which provides: "An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at ... any examination of an employee in the unit by a representative of the agency in connection with an investigation if—(i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and (ii) the employee requests representation." 5 U.S.C. § 7114(a)(2)(B). The matter was initially referred to an administrative law judge (ALJ).

#### 1) The ALJ's decision.

The ALJ held that an employer has the following options when an employee requests union representation at a requested interview: (1) grant the request; (2) discontinue the examination; or (3) offer the employee the option of continuing the examination without representation or having no examination at all. The ALJ found that INS did not overtly deny Cruz union representation. However, the ALJ also found that Granelli's repeated statements about the possible disadvantages of union representation in a criminal investigation caused Cruz to withdraw his request.

The ALJ's decision focused on whether Cruz voluntarily waived his right to union representation. The opinion states: "Here, the OPR agents did not offer Cruz the option of continuing the interview unaccompanied by a Union representative, or having no interview at all. Instead, SA Granelli proceeded to repeatedly present reasons why Union representation was not to Cruz or his representative's advantage and, thereby, secured Cruz's waiver of the right." The ALJ concluded INS coerced Cruz into waiving union representation, that this coercion rendered Cruz's waiver involuntary, and therefore the INS agents constructively violated § 7114(a)(2)(B).

#### 2) The FLRA's decision.

On review of the ALJ's decision, the FLRA found that the manner, nature, and repetition of Granelli's statements amounted to coercion which "discouraged and dissuaded" Cruz from adhering to his initial request for union representation. According to the FLRA, this was enough to violate the rights established by § 7114(a)(2)(B) regardless of whether Granelli's admonitions were true. The FLRA therefore found it unnecessary to consider the ALJ's statement about an employer's three options.

### II. Standard of review.

Under the Administrative Procedure Act, this court will not set aside the FLRA's decision unless it is "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with the law[.]" 5 U.S.C. §§ 7123(c), 706(2)(A); *see American Federation of Gov't Employees v. F.L.R.A.*, 794 F.2d 1013, 1015 (5th Cir.1986). The FLRA is entitled to deference when it exercises its "'special function of applying the general provisions of the [statute] to the complexities' of federal labor relations." *Bureau of Alcohol, Tobacco & Firearms v. F.L.R.A.*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). The FLRA's findings of fact, "if supported by substantial evidence on the record considered as a whole, shall be conclusive." 5 U.S.C. § 7123(c).

III. Analysis.

The parties do not now dispute that § 7114(a)(2)(B) applies to Cruz's interview. They stipulated that Cruz initially requested union representation and that he reasonably feared that the interview might lead to disciplinary action. The only issue before us is whether the actions of Granelli, Suitt, and Escobedo constructively violated § 7114(a)(2)(B).

A. The statutory framework.

In *N.L.R.B. v. Weingarten*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), the Supreme Court approved the National Labor Relations Board's (NLRB) construction of section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157. The approved construction gave employees covered by the NLRA a qualified right to union representation in investigatory interviews conducted by the employer. The Supreme Court explained the contours of the right as follows:

> *First,* the right inheres in § 7's guarantee of the right of employees to act in concert for mutual aid and protection.
>
> . . . .
>
> *Second,* the right arises only in situations where the employee requests representation.
>
> . . . .
>
> *Third,* the employee's right to request representation as a condition of participation in an interview is limited to situations where the employee reasonably believes the investigation will result in disciplinary action.
>
> . . . .
>
> *Fourth,* exercise of the right may not interfere with legitimate employer prerogatives. The employer has no obligation to justify his refusal to allow union representation, and despite refusal, the employer is free to carry on his inquiry without interviewing the employee, and thus leave to the employee the choice between having an interview unaccompanied by his representative, or having no interview and forgoing any benefits that might be derived from one.
>
> . . . .

> *Fifth,* the employer has no duty to bargain with any union representative who may be permitted to attend the investigatory interview.

*Weingarten,* 420 U.S. at 256–259, 95 S.Ct. at 963–65 (emphasis in original). This has become known as the *Weingarten* right.

The FLRA has consistently held that Congress enacted § 7114(a)(2)(B) in order to extend the *Weingarten* right to federal employees. *See, e.g., United States Dept. of Veterans Affairs Medical Center v. American Fed'n of Gov't Employees Local 1384,* 39 F.L.R.A. 717, 720 (1991); *Norfolk Naval Shipyard v. Tidewater Virginia Federal Employees Metal Trades Council,* 35 F.L.R.A. 1069, 1073 (1990); *United States Dep't of Justice, Bureau of Prisons v. American Fed'n of Gov't Employees, AFL–CIO, Local 3148,* 27 F.L.R.A. 874, 879 (1987). Other circuits confirm this purpose. *See, e.g., Defense Criminal Investigative Serv., Dep't of Defense v. F.L.R.A.,* 855 F.2d 93, 96 (3rd Cir.1988); *Internal Revenue Serv. v. F.L.R.A.,* 671 F.2d 560, 563 (D.C.Cir.1982). The legislative history also shows that § 7114(a)(2)(B) was intended to reflect the *Weingarten* holding. *See* 124 Cong.Rec. 29,184 (1978) (statement of Congressman Udall).

The FLRA's application of § 7114(a)(2)(B) adopts the three options articulated by the ALJ. An employer may: (1) grant an employee's request for representation; (2) discontinue the interview; or (3) offer the employee a choice to continue the interview without representation or have no interview. *See Norfolk Naval Shipyard,* 35 F.L.R.A. at 1077; *Bureau of Prisons,* 27 F.L.R.A. at 879. This accords with the requirements in § 7114(a)(2)(B) that the employee must request representation and reasonably believe the examination may result in disciplinary action. In light of *Weingarten,* the FLRA's construction of the statute is proper. *Accord, Defense Criminal Investigative Serv.,* 855 F.2d at 96.

B. Application.

The FLRA found that INS coerced Cruz into rescinding his request for union

representation. The FLRA did not find Granelli's statements that Neira could be subpoenaed and that there was no union representative privilege were incorrect. Nor did the FLRA find that Granelli deliberately tried to mislead Cruz. Instead, the FLRA found that the manner, nature, and repetition of Granelli's statements were sufficiently coercive to cause a reasonable person in Cruz's position to waive his request for union representation. This latter finding is supported by substantial evidence in the record, and it is conclusive for purposes of our review. This coercion may establish a constructive denial of the option of an interview with union representation.

■ It does not follow, however, that this coercion by Granelli constitutes an unfair labor practice. Under the FLRA's construction of § 7114(a)(2)(B), an employer faced with a request for union representation may offer the employee the option of participating in the interview without representation or having no interview at all. Here, both the ALJ and the FLRA found that Cruz was told that he could have a union representative present but with the potential disadvantage noted, that his participation in every stage of the interview was voluntary, and that he could terminate the interview at any time. Cruz did, indeed, terminate the interview before completion by refusing to answer any more questions. These facts would establish that INS offered Cruz the option of participating with representation, participating without representation, or having no interview. To the extent that the ALJ concluded on the present record that Cruz was not offered the right to have no interview, his finding was unsupported and incorrect.

■ The FLRA determined INS coerced Cruz to rescind his request for representation. It did not consider whether the ALJ's conclusions were proper. Most significantly, it did not decide whether Cruz voluntarily decided to *participate* in the interview after he had been coerced to withdraw his request that his union representative be present. If his choice to participate in the interview was not coerced, he was given the option of having

an interview without representation or having no interview at all. By itself, a constructive denial of a request for union representation does not invalidate an employer's offer of this option.

■ Both *Weingarten* and the FLRA's construction of § 7114(a)(2)(B) necessarily require that the employee voluntarily decides that it is in his or her best interest to participate without representation rather than to have no interview. The mere fact that an interview would benefit the employee is not sufficient to render the decision to participate involuntary. Such an inference of coerced participation would vitiate the employer's third option. If the employer chooses to avoid the issue by not interviewing, employees lose the benefit of a personal interview.

The record on appeal does not contain a determination of whether Cruz voluntarily participated in this interview. Such a determination is critical to the final resolution of the petition for review.

IV. Conclusion.

We uphold the FLRA's construction of § 7114(a)(2)(B) in *Norfolk Naval Shipyard* and *Bureau of Prisons*. The FLRA's order in today's case fails to apply these precedents correctly and creates a construction of § 7114(a)(2)(B) that is an abuse of discretion and not in accordance with the law. We therefore grant the petition for review, vacate the decision and order, and deny enforcement on the basis of the present record. The proceeding is remanded so that the FLRA may consider whether Cruz's decision to participate in the interview was voluntary. *Amicus curiae*, the American Federation of Government Employees National Border Patrol Council, suggests that we address whether INS correctly advised Cruz that no privilege arises out of the employee-union representative relationship. Our decision makes it unnecessary to reach this issue, and we decline to do so.

ENFORCEMENT DENIED. DECISION AND ORDER VACATED. PRO-

CEEDING REMANDED FOR FURTHER FINDINGS.